IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  1:17CR470 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN A. POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| APRIL BAXLEY-HUMBERT, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney, and Assistant United States Attorney, Danielle K. Angeli, respectfully submits this sentencing memorandum for Defendant April Baxley-Humbert ("Defendant").  For the reasons set forth in the attached memorandum, the United States respectfully requests that the Court sentence Defendant to 30 months' imprisonment.

                                                  Respectfully submitted,

                                                  JUSTIN E. HERDMAN
                                                  United States Attorney

By:   /s/ Danielle K. Angeli
        Danielle K. Angeli (MI: P81362)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3875
        (216) 522-8354 (facsimile)
        Danielle.Angeli@usdoj.gov

**I. Background**

On June 25, 2003, the Fayette County Court of Common Pleas sentenced Defendant to two to five years for indecent assault with a person less than 13 years of age, in violation of 18 Pa.C.S. § 3126(a)(7), and corruption of minors with a person who is seven years of age by engaging in immoral acts of sex, in violation of 18 Pa.C.S. § 6301(a)(1). Specifically, the victim, Defendant's son, explained that Defendant "pulled on me and my friend's peanut," and described his "peanut" as the place where pee comes out. He further described that, at the age of seven, he had sex with his mother on one occasion and his father walked in on them. He explained that his mother would pull on his peanut and put it into her private part. (R. 22: Presentence Investigation Report "PSR", ¶ 37, PageID 83). In a follow-up interview, Defendant's son explained that his father participated by getting naked and going behind him while he was on top of his mother. (*Id.*, ¶ 37, PageID 84). As part of her sentence for indecent assault and corruption of minors, Defendant is required to register as sex offender and update her registration. Likewise, she is subject to the Sex Offender Registration and Notification Act ("SORNA") requirements. (*Id.*, ¶ 5, PageID 78).

On July 8, 2008, Defendant was released from the custody of the Pennsylvania Department of Corrections. Defendant's whereabouts were unknown until August 5, 2009, when she registered with the Cuyahoga County Sheriff's Office. From August 2009 through May 2014, she periodically registered at various addresses in Cuyahoga County and Lake County. (*Id.*, ¶ 6). On May 13, 2014, Defendant registered with the Ashtabula County Sheriff's Office. Less than two months later, Defendant registered with the Texarkana Police Department, and provided an address on Ash Street in Texarkana, Arkansas. When she registered in Arkansas, Defendant signed a form that explained her registration requirements, including the requirement

to register in person on January 9, 2015, and to report any change in address. (*Id.*, ¶ 8). Later, Defendant admitted to the U.S. Marshals Service that the Texarkana Police Department told her that she had 48 hours to move to Ohio and register. (*Id.*, ¶ 15). After Defendant registered in Arkansas, the Texarkana Police Department attempted to verify Defendant's address but could not make contact with her. A detective later determined that the house was vacant and Defendant's whereabouts were unknown. (*Id.*, ¶ 8). That same month, Defendant called the Ashtabula County Sheriff's Office and explained that she had moved to Ashtabula County. The Sheriff's Office instructed Defendant to come in person to register, but she never did. (*Id.*, ¶ 9, PageID 79).

After July 2014, Defendant's residence was unknown and she failed to register again until she was released on bond in this case. During an interview, Defendant admitted to the U.S. Marshals Service that she had been living in Ohio for over four years. She admitted that she had lived in Fairport Harbor from October 2014 through September 2015. She also lived in Morgantown, West Virginia, at a homeless shelter for approximately one month, and in Fayette County, Pennsylvania, from November 2015 through June 2016. She then moved to Ashtabula County, Ohio. (*Id.*, ¶ 15).

On July 12, 2017, Defendant obtained a driver's license from the Ohio Bureau of Motor Vehicles with an address in Geneva, Ohio. (*Id.*, ¶ 10). From September 18, 2017, through September 26, 2017, she resided at the Project Hope homeless shelter in Painesville, Ohio, until staff removed her from the facility. (*Id.*, ¶ 11). On September 29, 2017, the Lake County Sheriff's Office received information from a concerned citizen that Defendant was sleeping in her car in the parking lot of the Giant Eagle in Painesville, Ohio. (*Id.*, ¶ 12).

3

On October 10, 2017, a Deputy U.S. Marshal searched the Ohio sex-offender registry and determined that Defendant had not registered in Ohio. (*Id.*, ¶ 14). Likewise, the Ohio Attorney General's Office confirmed that, as a result of Defendant's indecent assault conviction, she was required to register as a sex offender until June 25, 2018. (*Id.*, ¶ 16).

On October 19, 2017, Defendant was arrested on a criminal complaint for failure to register or update her sex-offender registration as required by SORNA, in violation of 18 U.S.C. § 2250(a). On the same day, Defendant had her initial appearance, and the magistrate judge entered an order of temporary detention pending a bail hearing. (R. 5: Order, PageID 10). On October 26, 2017, pretrial services completed a home inspection at a residence where Defendant had recently lived. Pretrial services determined that the residence was unsuitable because there was an eight-year-old child living in the home and it was located in front of an elementary school. (R. 22: PSR, ¶ 3, PageID 78). On November 13, 2017, Defendant was released on a $20,000 unsecured bond with special conditions to a homeless shelter in Cleveland. (*Id.*).

On November 14, 2017, a federal grand jury returned a one-count indictment against Defendant for the same offense. (R. 14: Indictment, PageID 28). On January 4, 2018, Defendant pled guilty to Count One of the Indictment without a plea agreement. (R. 20: Hearing Minutes, PageID 55-56). The PSR indicates that Defendant's indecent-assault conviction most closely resembles conduct described in 18 U.S.C. § 2244(c), abusive sexual contact. Accordingly, Defendant is a Tier III sex offender under SORNA, and her base offense level is 16. (*Id.*, ¶¶ 17, 23, PageID 80); U.S.S.G. § 2A3.5(a)(1). If Defendant qualifies for and is granted the full three points for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), then Defendant's total offense level would be 13. (R. 22: PSR, ¶ 32, PageID 32). The PSR calculates that Defendant's

4

criminal history category is IV. (*Id.*, ¶ 40, PageID 84). Therefore, her Guidelines range is 24-30 months and is located in Zone D. (*Id.*, ¶ 71, PageID 89).

**II. Defendant Classifies As a Tier III Offender Under SORNA.**

Although Defendant's conviction for indecent assault of a minor under the age of 13 occurred before Congress enacted SORNA, the Attorney General has the authority to specify the applicability of SORNA's registration requirements to pre-SORNA offenders. *Reynolds v. United States*, 565 U.S. 432, 435 (2012) (quoting 34 U.S.C. § 20913(d)).[1] As part of her sentence, the Fayette County Common Pleas Court required that Defendant register as a sex offender for 10 years upon release from prison, and the Ohio Attorney General confirmed that she is required to register until June 25, 2018, under Ohio Revised Code § 2950. (*Id.*, ¶ 16, PageID 80). Because SORNA applies a separate, retroactive federal obligation to register, a district court need not tailor its base offense level decision to the state-law tier applicable to a pre-SORNA sex offense conviction. *United States v. Gudger*, 624 F. App'x 394, 396 (6th Cir. 2015).

SORNA defines a "sex offender" as "an individual who was convicted of a sex offense" that falls within the statute's defined offenses. 34 U.S.C. § 20913(a). A "sex offense" includes, *inter alia*, "specified offense[s] against a minor." 34 U.S.C. § 20911(5)(A)(iii). SORNA further defines "specified offense against a minor" as an "offense against a minor that involves" the following nine specified categories of conduct:

(A) An offense (unless committed by a parent or guardian) involving kidnapping.

---

[1] Although the Supreme Court, in *Gundy v. United States*, No. 17-6086, will determine whether SORNA's delegation of authority to the Attorney General violates the non-delegation doctrine, under her original sentence, Defendant is required to register until at least June 25, 2018.

5

(B) An offense (unless committed by a parent or guardian) involving false imprisonment.

(C) Solicitation to engage in sexual conduct.

(D) Use in a sexual performance.

(E) Solicitation to practice prostitution.

(F) Video voyeurism as described in section 1801 of Title 18.

(G) Possession, production, or distribution of child pornography.

(H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.

(I) Any conduct that by its nature is a sex offense against a minor.

34 U.S.C. § 20911(7).  SORNA classifies sex offenders into three tiers.  Relevant here, a "Tier III sex offender" is a sex offender whose offense is punishable by a term of imprisonment for more than one year and is, *inter alia*, comparable to or more severe than aggravated sexual abuse or abusive sexual contact against a minor who has not attained the age of 13 years.  34 U.S.C. § 20911(4)(A).  Such offenders are subject to lifetime registration.  34 U.S.C. § 20915(a)(3).

Currently, the Sixth Circuit has not definitively identified whether the circumstance-specific approach or the categorical approach should be used in determining a tier level under SORNA.  *See United States v. Greene*, No. 3:16-00075-1, 2017 WL 395053, at *2 (M.D. Tenn. Jan. 30, 2017).  In *United States v. Stock*, 685 F.3d 621, 628 (6th Cir. 2012), the Sixth Circuit "decline[d] to decide whether it would have been appropriate for the district court to inquire into the specific factual circumstances of [defendant's state] violations, rather than to limit itself to the fact of [defendant's] convictions."  *Id.*; *see also Gudger*, 624 F. App'x at 397 n.1 (declining to "decide whether the district court should have applied the categorical approach when placing [defendant] in a SORNA tier").

Courts construing "specified offense against a minor" in the context of SORNA requirements, however, have uniformly held that a circumstance-specific approach is appropriate. *See United States v. Hill*, 820 F.3d 1003, 1005 (8th Cir. 2016); *United States v. Prince*, 777 F.3d 700, 709 (4th Cir. 2015); *United States v. Gonzalez-Medina*, 757 F.3d 425, 431 (5th Cir. 2014); *United States v. Dodge*, 597 F.3d 1347, 1354 (11th Cir.) (*en banc*), *cert. denied*, 562 U.S. 961 (2010); *United States v. Mi Kyung Byun*, 539 F.3d 982, 989-90 (9th Cir. 2008), *cert. denied*, 555 U.S. 1088 (2008); *Suhail v. U.S. Attorney General*, Case No. 15-cv-12595, 2015 WL 7016340, at *7-8 (E.D. Mich. Nov. 12, 2015) (collecting cases).

Based on SORNA's text, structure, and purpose, the Fourth Circuit has concluded that Congress intended the circumstance-specific approach to apply to analysis of subsection (7)(I), which is the catch-all provision that categorizes "any conduct that by its nature is a sex offense against a minor" as a sex offense under SORNA. *Prince*, 777 F.3d at 708 & n.8. Moreover, where a statute contains language that refers to specific circumstances or conduct, the Supreme Court "has determined that Congress meant to allow the circumstance-specific approach's more searching factual inquiry concerning a prior offense." *Id.* at 708-09 (citing *Nijhawan v. Holder*, 557 U.S. 29, 37 (2009)). In contrast to subsection (5)(A)(i)'s reference to the "element[s]" of the offense, subsection (7)(I) refers to the "conduct" underlying the prior offense, which indicates Congress's intent to "cover a broader range of prior offenses than those reached by subsection (5)(A)(i)." *Id.* (citing *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 341 (2005)). The circumstance-specific approach likewise furthers SORNA's purpose of protecting the public, and specifically children, from sex offenders. *Id.* at 709. Further, Sixth Amendment concerns that militate in favor of the categorical approach in other contexts do not apply because a jury must still conclude that a defendant is a "sex offender" as defined under SORNA. *Id.* at

7

709-10. Accordingly, the Court should apply the circumstance-specific approach when classifying Defendant's prior offense under SORNA's tier system.

The relevant definition of a Tier III sex offender under SORNA imposes a classification for sex offenses comparable to aggravated sexual abuse or sexual abuse, or abusive sexual contact against a minor under 13, as defined by 18 U.S.C. §§ 2241, 2242, and 2244. Abusive sexual contact is defined to prohibit conduct that would violate §§ 2241, 2242, or 2243, where there was sexual contact, rather than a sexual act. "Sexual contact" is defined more broadly than "sexual act," but still requires physical contact. 18 U.S.C. § 2246(3) ("'Sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."). Section 2243 prohibits sexual abuse of a minor, which occurs when a person knowingly engages in a sexual act with another person who has attained the age of 12 years but has not attained the age of 16 years and is at least 4 years younger than the person so engaging. 18 U.S.C. § 2243(a).

Here, Defendant's prior Pennsylvania conviction for indecent assault qualifies as a "criminal offense that is a specified offense against a minor" under subsections (5)(A)(ii) and (7)(I), and "is comparable to or more severe than" abusive sexual contact against a minor under thirteen. *See* 34 U.S.C. § 20911(4)(A). In Pennsylvania, the indecent-assault statute prohibits a person from having "indecent contact with the complainant or caus[ing] the complainant to have indecent contact with the person[.]" 18 Pa.S.C. § 3126(a). Section (a)'s subsections provide additional prohibited conduct involving non-consent, forcible compulsion, unconsciousness, substantial impairment, mental disability, and a minor under the age of 13, *inter alia*. *Id.* Further, indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the

8

person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.S.C. § 3101.

Specifically, Defendant's prior conviction involves her engaging in sexual intercourse with her seven-year-old son. During trial, the victim testified that his "mom had sex with [him,]" "rubbed up and down on [him,]" and that her private part was touching his private part. Because Defendant's prior conviction involved Defendant knowingly engaging in the touching of sexual or intimate parts for the purpose of arousing or gratifying sexual desire with a minor under the age of 13, it is comparable to or more severe than abusive sexual contact of a minor under 18 U.S.C. § 2244(c).

Similarly, the Court may apply a non-categorical approach to determine the victim's age. *See United States v. Byun*, 539 F.3d 982, 992 (9th Cir. 2008) ("Congress contemplated a non-categorical approach as to the age of the victim in determining whether a particular conviction is for a 'specified offense against a minor,'" and that SORNA's legislative history "fully supports this conclusion") (quoting 34 U.S.C. § 20911). Specifically, Defendant's criminal complaint and information charge her with a violation of § 3126(a)(7), which prohibits indecent assault when the complainant is less than 13 years old. Moreover, the affidavit of probable cause accompanying the criminal complaint lists the victim's age as seven years old, and the information for corruption of minors, arising from the same facts as the indecent assault, specifically references the victim as being seven years old. Therefore, because Defendant's indecent-assault conviction is punishable by more than one year of imprisonment and most closely resembles the federal offense of abusive sexual contact of a minor who has not attained the age of 13 years, in violation of 18 U.S.C. § 2244(c), Defendant is classified as a Tier III sex

9

offender under SORNA and is subject to lifetime registration requirements. 42 U.S.C. § 20911(4); (*see also* R. 22: PSR, ¶ 17, PageID 80).

Pennsylvania's treatment of the criminal statute under SORNA is likewise persuasive. The Pennsylvania legislature and the Pennsylvania Supreme Court have classified a conviction under 18 Pa.C.S. § 3126(a)(7) as a Tier III offense under SORNA. *See* 42 Pa.C.S.A. § 9799.14(d)(8); *see also Commonwealth v. Muniz*, 164 A.3d 1189, 1207 (Pa. 2017) (noting that a § 3126(a)(7) conviction is a Tier III offense).[2]

In any event, the Pennsylvania statute, under the modified-categorical approach, remains comparable to abusive sexual contact. Because the indecent-assault statute provides for different penalties for each of its subsections, the statute is divisible, and the Court should employ the modified-categorical approach. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (when subsections carry different punishments, they must be elements); *Mathis v. United States*, 136 S. Ct. 2243, 2256 (same); *see also United States v. Goodson*, 700 F. App'x 417, 421 (6th Cir. 2017) (applying *Descamps v. United States*, 570 U.S. 254, 257-58 (2013), and *Mathis* to the Sentencing Guidelines). Under such approach, the Court may look to a limited class of documents, including the charging document and the jury instructions, to determine which alternative formed the basis of the prior conviction. *Descamps*, 570 U.S. at 257-58; *see also Shepard v. United States*, 544 U.S. 13, 16 (2005) (to ascertain the precise basis of a prior conviction, courts may

---

[2] In *Muniz*, the Pennsylvania Supreme Court ultimately concluded that retroactive application of SORNA's registration provisions violated the *ex post facto* clause of the U.S. Constitution, however, the Sixth Circuit has rejected that argument. *See, e.g., United States v. Felts*, 674 F.3d 599, 605-06 (6th Cir. 2012) (holding that retroactive application of SORNA does not violate the *ex post facto* clause of the U.S. Constitution).

10

consider the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented").

Defendant's criminal complaint provides that Defendant "did have indecent contact with . . . who is less than 13 years of age. To wit, the DEFENDANT did take . . . into her hands and used same to manipulate her genitalia for sexual gratification." Likewise, the information provided that Defendant "unlawfully did have indecent contact with another person, or did cause such other to have indecent contact with him/her, when such other person was less than 13 years of age" in violation of 18 Pa.C.S. § 3126(a)(7). Based on the *Shepard* documents, Defendant's prior conviction was for a violation of subsection (a)(7), which prohibits a person from having "indecent contact with the complainant or caus[ing] the complaint to have indecent contact with the person" if "the complainant is less than 13 years of age[.]" 18 Pa.C.S. § 3126(a)(7). Again, indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101. Because § 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[,]" the Pennsylvania definition of indecent contact is stricter than § 2246's definition because it requires sexual desire, and both require physical contact with intimate parts. Accordingly, under the modified-categorical approach, 18 Pa.C.S. § 3126(a)(7) is comparable to abusive sexual contact, and Defendant is a Tier III sex offender under SORNA, subject to lifetime registration requirements. The PSR reached the same conclusion. (R. 22: PSR, PageID 96).

11

**III. Sentencing Factors**

Considering the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and Defendant's history and characteristics, a high-end Guidelines sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, and to afford adequate deterrence.

Initially, when Defendant was released from custody, she failed to register or update her sex-offender registration for over a year. From 2009 through 2014, Defendant periodically updated her registration in Ohio. In July 2014, however, she registered in Texarkana, Arkansas. But the Texarkana Police Department was unable to ever verify her address or make contact with her. Eventually, they determined that the address was a vacant house and her whereabouts were unknown. For over three years, Defendant failed to update her sex-offender registration in any state.

When passing SORNA, Congress was motivated at least in part by a concern about "missing" sex offenders: "The most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation[,] are 'missing,' meaning they have not complied with sex offender registration requirements." H.R. Rep. No. 109-218, pt. 1, p. 26 (2005). "This typically occurs when the sex offender moves from one State to another." *Id.* That is exactly what Defendant did. She moved to Arkansas in July 2014, registered, and then went "missing" until September 2017, when Project Hope contacted the Lake County Sheriff's Office. Moreover, Defendant admitted to the U.S. Marshals Service that she moved back to Ohio a few months after registering in Arkansas. From 2014 through 2017, Defendant had multiple residences that she resided in for several months at a time, but failed to update her

12

registration.  Further, pretrial services found that one of those residences was an unsuitable placement for pre-trial release because an eight year old lived there and the home was located in front of an elementary school.  (R. 22: PSR, ¶ 21, PageID 80).  Given the similarity in age to the victim and the close proximity to an elementary school, this makes Defendant's failure-to-register offense particularly egregious.

Similarly, Defendant's history and characteristics support a high-end Guidelines sentence.  Defendant has a history of physical and sexual abuse of her biological children.  Further, she has established a long pattern of failing to update her registration when she changes her residence.  Defendant's actions demonstrate a lack of respect for sex-offender registration laws.  Although Defendant has stated that she could not register while she was homeless, she also failed to register while maintaining multiple permanent residences, by her own admission, for several months at a time.  She also managed to obtain an Ohio driver's license with a permanent address during that period.  Moreover, although sometimes Defendant did not have a permanent residence, she could have updated her registration to reflect that she was living at a homeless shelter, but she failed to do so.

Likewise, a high-end Guidelines sentence is necessary to reflect the seriousness of the offense.  Indeed, Congress has determined that Defendant's prior conviction is so serious that she requires lifetime sex-offender registration in order "to protect the public[.]"  34 U.S.C. § 20901.  Defendant's failure to update her registration allowed her to live without law enforcement or the community knowing her whereabouts for years.  Further, Defendant has admitted that she did not even attempt to register while she was living in Lake County, including when she was living in the residence with a minor child near an elementary school.

Moreover, such a sentence will promote adequate deterrence to future criminal conduct. Because Defendant requires lifetime registration, a high-end Guidelines sentence will provide specific deterrence. In 2013, Defendant was convicted of a misdemeanor offense for attempted registration sex offender. (R. 22: PSR, ¶ 38, PageID 84). She received a sentence of 90 days in jail, with 89 days suspended and credit for 1 day, plus 3-months' probation. (*Id.*). Not only did this sentence fail to deter Defendant, she moved to Arkansas a year later, and then went "missing" for three years. A high-end Guidelines sentence will impose a significant period of incarceration to deter Defendant from violating her sex-offender registration requirements in the future. Similarly, such a sentence will serve as an example to other potential offenders who may not appreciate the gravity of this conduct. The possibility of a lengthy term of imprisonment will deter individuals from committing similar offenses and going "missing" by failing to update their registration when they change residences.

Further, there is a strong need to protect the public from Defendant's future crimes. Given Defendant's criminal history, pattern of failing to update her registration, and the fact that she was living with a minor child near an elementary school during a portion of the time that she did not register, there is a compelling need for the Court to impose a term of imprisonment that will protect the community.

Accordingly, the United States submits that a high-end Guidelines sentence is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from future crimes by Defendant. For these reasons, and for those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a sentence at the high-end of the advisory Guidelines range of 30 months' imprisonment.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney


/s/ Danielle K. Angeli
Danielle K. Angeli (MI: P81362)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3875
(216) 522-8355 (facsimile)
Danielle.Angeli@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 28th day of June 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

        /s/ Danielle K. Angeli
        Danielle K. Angeli
        Assistant U.S. Attorney